IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DIANA LYNN ANDERSON )<br>)<br>v. )<br>)<br>SOCIAL SECURITY ADMINISTRATION ) | No. 3:15-0579<br>Judge Sharp/Bryant |

To:   The Honorable Kevin Sharp, Chief Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for Supplemental Security Income (SSI) benefits, as provided under Title XVI of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which defendant has responded (Docket Entry No. 14). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff filed her application for SSI benefits on November 8, 2011, alleging disability beginning May 1, 2010, due to problems with her back, legs, and knees. (Tr. 18,

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

126) Her application was denied at the initial and reconsideration stages of agency review, whereupon she requested *de novo* review of her claim by an Administrative Law Judge (ALJ). The ALJ hearing was held on September 23, 2013, and plaintiff appeared with counsel and gave testimony. (Tr. 33-53) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until January 3, 2014, when he issued a written decision in which he concluded that plaintiff was not disabled. (Tr. 18-26) That decision contains the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since November 8, 2011, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: lumbar degenerative disc disease and obesity (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she cannot climb ladders and cannot more than occasionally climb stairs, balance, stoop, kneel, crouch or crawl.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 9, 1962 and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability

>     because using the Medical-Vocational Rules as a framework supports a finding
>     that the claimant is "not disabled," whether or not the claimant has
>     transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P,
>     Appendix 2).
>
> 9.  Considering the claimant's age, education, work experience, and residual
>     functional capacity, there are jobs that exist in significant numbers in the
>     national economy that the claimant can perform (20 CFR 416.969 and
>     416.969(a)).
>
> 10. The claimant has not been under a disability, as defined in the Social Security
>     Act, since November 8, 2011, the date the application was filed (20 CFR
>     416.920(g)).

(Tr. 20-22, 24-26)

On March 30, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following brief summary is taken from plaintiff's brief, Docket Entry No. 13 at pages 2-3:

> Records in the file show assessments of diverticulitis, insomnia, back pain, uncontrolled hypertension, and borderline diabetes mellitus. R. 199, 210, and 434.
>
> The Plaintiff has presented to the ER on multiple occasions with back pain radiating to the lower extremities. Records show multiple diagnoses of sciatica. R. 258, 274, and 287.

Dr. Albert Gomez performed a consultative examination on March 31, 2009. A physical examination revealed decreased ROM of the hips, moderate tenderness to palpation and edema of the right leg, and moderate tenderness to palpation of the lumbar spine. R. 310.

Dr. Gomez listed assessments of multiple joint pain, DJD, and obesity. R. 310.

Dr. Bruce Davis performed a consultative examination on December 16, 2011. He listed assessments of grade III extreme obesity; hypertension; back, legs, and knee complaints; and situational depression and anxiety. R. 331.

Dr. Davis assigned limitations of lifting and/or carrying ten to twenty pounds occasionally; lifting and/or carrying ten pounds frequently; sitting for six hours total; and standing/walking for four hours total. R. 331.

A chest x-ray from December 12, 2012, revealed mild lung hyperinflation suggestive of asthma, bronchitis, or COPD. R. 426.

The Plaintiff was admitted from April 24, 2012, through April 25, 2012, when she underwent surgery for a recurrent ventral hernia. R. 434.

### III.  Conclusions of Law

#### A.  Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). While this is a deferential standard, it is not a trivial one; a finding of substantial evidence must "take into account whatever in the record fairly detracts from its weight." Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). Nevertheless, the SSA's decision must stand if substantial evidence supports the conclusion reached, even if the record contains substantial evidence that would have supported an opposite conclusion. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

### B.  Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1) A claimant who is engaging in substantial gainful activity will not be found

5

to be disabled regardless of medical findings.

2) A claimant who does not have a severe impairment will not be found to be disabled.

3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520, 416.920. "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry ... the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be

6

used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred when he gave greater weight to the opinions of the nonexamining state agency consultants than to the opinion of the consultative examiner, Dr. Bruce Davis, who opined, e.g., that plaintiff could only stand/walk for four hours total in an eight-hour day. (Tr. 333) In weighing this opinion, the ALJ stated that Dr. Davis "did not refer to any abnormal medical findings which would be consistent with the restriction on claimant's ability to stand or walk," but only noted plaintiff's obesity and body mass index (BMI) of 40. (Tr. 24) The ALJ further noted that at the consultative exam, plaintiff "had a normal gait and although slow, was able to heel, toe, and tandem walk across the exam room without assistance." Id. While no particular

7

deference is owed to any one-time examiner, the regulations do establish that, "[a]s a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination...." Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1)). Notwithstanding the general priority of an examining source's opinion, the ALJ here gave specific reasons for her weighing of the medical opinions in this case. As mentioned, the ALJ found Dr. Davis's assessment of plaintiff's capacity for standing/walking to be inconsistent with the results of his examination. On the other hand, the ALJ stated that the opinions of the nonexamining physicians, which allowed for standing/walking for about six out of eight hours (Tr. 337, 365), are consistent with the opinions of an earlier examining physician (consultative examiner Dr. Gomez, who opined in March 2009 that plaintiff could stand at least six hours with normal breaks (Tr. 311)) and are, "more importantly, consistent with claimant's limited treatment records." (Tr. 24) No more particular rationale for the weight given the opinions of non-treating sources is required. See Norris v. Comm'r of Soc. Sec., 461 Fed. Appx. 433, 439 (6th Cir. Feb. 7, 2012).

  Plaintiff argues that the ALJ applied more rigorous scrutiny to the opinion of Dr. Davis than to the opinions of the nonexamining physicians, contrary to the principles elucidated by the Sixth Circuit in Gayheart. However, this does not appear to be so, as demonstrated above. In any event, although Gayheart rightly explained that the regulations direct the application of "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker," 710 F.3d at 375, that case was principally concerned with the glossing over of defects in consulting physicians' opinions only to apply "greater scrutiny to a treating-source opinion as a means to justify

8

giving such an opinion little weight," 710 F.3d 379-80, which it condemned.  Nonexamining state agency consultants are experts at evaluating disability claims under the regulations, see Potts v. Astrue, 2009 WL 2168731, at *5-6 (M.D. Tenn. July 17, 2009) (quoting 20 C.F.R. § 404.1527(f)(2) and SSR 96-6p), and their opinions may be given greater weight than those of examining sources in proper cases, where supported by an adequate explanation.  See Norris, 461 Fed. Appx. at 440 ("While perhaps the ALJ could have provided greater detail, particularly as to why the nonexamining opinions were more consistent with the overall record, the ALJ was under no special obligation to do so insofar as he was weighing the respective opinions of nontreating versus nonexamining sources. *See Smith [v. Comm'r of Soc. Sec.]*, 482 F.3d at 876. So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review. Accordingly, we conclude that the ALJ did not err in assigning greater weight to the opinions of the nonexamining consultants.").  In the case at bar, the assessments of plaintiff's physical limitations from the consultative examiner and the state agency physicians differ only slightly, and the ALJ's decision to accord more weight to the latter was sufficiently explained.  The undersigned finds no error here.

Plaintiff next contends that the ALJ erred at the second step of the sequential evaluation by failing to find severe, or sufficiently state his reasons for not finding severe, her diagnosed diverticulitis, insomnia, sciatica, uncontrolled hypertension, and borderline diabetes mellitus.  However, the ALJ did all that he was required to do at the second step:  he identified impairments that would be expected to have a significant effect on plaintiff's ability to perform work-related activities, and proceeded to the third step of the sequential evaluation.  (Tr. 20-21)  The regulations do not require that all diagnosed impairments be

scrutinized for their severity. Indeed, even an erroneous finding of impairment nonseverity cannot amount to reversible error, so long as at least one severe impairment is identified and the sequential evaluation continues. See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). Ultimately, a claimant's residual functional capacity is determined in view of the combined effects of *all* medically determinable impairments, severe and nonsevere alike. Accordingly, the fact that some of plaintiff's diagnosed impairments went unmentioned at the step two severity determination is "legally irrelevant." Anthony v. Astrue, 266 Fed. Appx. 451, 457 (6th Cir. Feb. 22, 2008) (citing Maziarz, supra).

In determining plaintiff's RFC, the ALJ considered plaintiff's allegations of back pain that radiated to her legs, insomnia, and other symptoms which plaintiff contends should have resulted in additional severe impairments being found. He also gave appropriate consideration to her obesity. Plaintiff argues that, "[a]lthough the ALJ did discuss her obesity in the decision and even cited SSR 02-1p, the ALJ's dicsussion of h[er] obesity amounted to boilerplate language that could be plugged into any decision"; "the ALJ made no true analysis of the effects of the Plaintiff's obesity as required by SSR 02-1p." (Docket Entry No. 13 at 9) However, the ALJ explicitly took note of plaintiff's "obesity with a BMI of 40 and ... considered that impairment in limiting the claimant to light work activity." (Tr. 24) Moreover, as noted by the court in Coldiron v. Comm'r of Soc. Sec., 391 Fed. Appx. 435, 443 (6th Cir. Aug. 12, 2010), it is "'a mischaracterization to suggest that Social Security Ruling 02–1p offers any particular procedural mode of analysis for obese disability claimants.' Instead, SSR 02-1p provides that 'obesity, in combination with other impairments, 'may' increase the severity of the other limitations.'" Quoting Bledsoe v. Barnhart, 165 Fed. Appx.

10

408, 412 (6th Cir. 2006) and SSR 02-1p.  The ALJ here found that plaintiff's obesity was a severe impairment (Tr. 20) which combined with her back and knee symptoms to restrict plaintiff to light work with postural limitations (Tr. 24).  It is clear to the undersigned that plaintiff's obesity, as well as her other severe and nonsevere impairments, was properly considered.

Finally, plaintiff argues that the ALJ erred in failing to include an explicit function-by-function assessment in his determination of plaintiff's RFC.  The Sixth Circuit has addressed this matter as follows:

> In *Bencivengo [v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)]*, the Third Circuit stated, "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Bencivengo,* slip op. at 4. The Third Circuit distinguished between what an ALJ must consider and what an ALJ must discuss in a written opinion. The ALJ need not decide or discuss uncontested issues, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Bencivengo,* slip op. at 5.

Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547-48 (6th Cir. Mar. 4, 2002).  Here, the ALJ addressed plaintiff's exertional and nonexertional capabilities, making reference to the evidence that supports his conclusions.  Plaintiff has failed to identify any evidence supporting an impairment of physical function which was not considered.  The undersigned finds that the ALJ's RFC determination evidenced his entirely adequate consideration of plaintiff's functional abilities, and complied with SSR 96-8p.  See, e.g., Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 729 (6th Cir. Sept. 5, 2013).

In sum, the decision of the ALJ is supported by substantial evidence on the

record as a whole. That decision should therefore be affirmed.

### IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 22nd day of August, 2016.

      s/ John S. Bryant  
      JOHN S. BRYANT  
      UNITED STATES MAGISTRATE JUDGE